**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

2004 NOV 17 A 10: 37

U.S. DISTRICT COURT
HARTFORD, CT

-------------------------------------------------

|                                   | :  |
| LAURA NEEB,                       | :  |
|     **Plaintiff,** | :  **CIVIL ACTION NO.** |
|                                   | :  **303CV0307(AVC)** |
| **v.**                            | :  |
|                                   | :  |
| **UNUM LIFE INSURANCE**           | :  |
| **COMPANY OF AMERICA,**           | :  **November 15, 2004** |
|                                   | :  |
|     **Defendant.** | :  |
|                                   | :  |

-------------------------------------------------

## Plaintiff's Reply Brief to Defendant's Reply on an Opposition to a Motion For Judgment on the Administrative Record

In its last writing to this Court, Defendant's Reply to Plaintiff's Opposition to Motion for Judgment on the administrative record, the Defendant complained that the Plaintiff's motion was too lengthy and was submitted without prior approval from this Court. The Defendant also complains that the Plaintiff's motion is filled with too many arguments and too many factual issues. The Defendant further complains that the Plaintiff fails to appreciate deferential review under ERISA. The Plaintiff responds to these issues below.

### I. Length of the Motion

The Plaintiff acknowledges that her Opposition Statement was sixty-two pages in length. Ordinarily memoranda and other pre-trial papers are limited by the local rules to some forty pages in length under local Rule 7(a)(2). However, as the Defendant notes

1

repeatedly throughout its writings to this Court, that a Motion for Judgment on the Administrative Record is not a pre-trial matter, the motion is the functional equivalent of the trial itself. Muller v. First Unum Life Insurance Company, 341 F. 3d, 119 at 124, 2003 US App. LEXIS 16899 (2nd Cir. 2003)

Relying on the Muller decision , the Defendant has repeatedly argued that the only way that an ERISA matter may be adjudicated by this Court is through a Motion for Judgment on the Administrative Record.  Under the model suggested by the Defendant, the memoranda introduced for Judgment on the Administrative Record are not documents in support of routine administrative matters, the documents constitute the trial itself from either the Plaintiff's or the Defendant's bench.  In the case of the Plaintiff's motion, there are more than 10 substantial arguments that the Defendant acted improperly in its claims processing activities.

Defendant introduces authority to suggest that the Plaintiff's opposition should either be struck down or truncated.  However, none of the authorities provided by the Defendant take on anything quite like the Motions in this matter – which are in essence the trial itself.  In one case cited by the Defendant the issue was an overlong motion for a venue change. American Lines, LLC v. CIC Ins. Co., 2004 U.S. Dist. LEXIS 21106 (D. Conn September 30, 2004)  In a second authority cited by the Defendant, the issue is an overlong sur-reply that is thrown out for by a Court because it offered no new material or authority. Alexander v. City of New York,  2004 U.S. Dist. LEXIS 17042 *37 (S.D.N.Y. August 24, 2004).  In a third authority relied upon by the Defendant, the issue is again an overlong sur-reply. Piazza v. Eckerd Corp., 2003 U.S. Dist. LEXIS 25089 (W.D.N.Y. August 22, 2003)  The capstone case cited by the Defendant provides an erroneous cite and involves a 1930 long-term disability insurance case. Quirk V. United States, 45 F.2d

631-639 (W.D. PA 1930)

The authority offered by the Defendant is hardly compelling but nevertheless, the Defendant seeks to use the local rules to craft a new rule which essentially states that any discussion of an ERISA claim that is the functional equivalent of a trial shall not be more than 39 pages in length and shall be struck down. The Plaintiff contends that that is a significant difference from verbose venue change motions and irrelevant sur-replys. Interestingly, under the rule that <u>Alexander</u> and <u>Piazza</u> cite, which is a ten-page limit on sur-replys, many Federal Courts including this one, the Defendant's own sur-reply would have been prohibitively lengthy at eleven pages. Local Rule 7(d).

The Defendant has also complained that the Plaintiff has not submitted a fact and law summary of its case. In response to this argument, Plaintiff has attached a factual and legal summary for the Court's review. (Exhibit A)


## II. Standard of Review


The Plaintiff made numerous arguments to show that she had not received a fair hearing of her claim from the Defendant insurance company. In order to perfect her claim, the Plaintiff must show not only faulty factual items to seek to be compensated by her long term disability insurance policy, she must also show that the Defendant's claims' adjudication process was extremely faulty. Plaintiff has to show that the Defendant's conduct was arbitrary and capricious. As a consequence of this higher standard for the Plaintiff, the Plaintiff's brief will have to show substantial error in the Defendant's proceedings and may thus appear to be "Gordian" in its proportion. This is strange use of a phrase which refers to a knot which was cut simply by using a sword.

The Plaintiff contends that the real contortions that exist in this case are the exasperating reliance and parlor tricks that were employed to prop up the most dubious authority imaginable. Despite the fact, that half a dozen doctors found that the Plaintiff had anaphylaxis and that hundreds of pages of scientific data were introduced, the Plaintiff not only relied on a doctor who did not use medical history, but did not interview the Plaintiff and did not test the Plaintiff for the substance which caused her anaphylaxis. Even considering these numerous deficiencies, the Defendant's primary authority spoiled every test he performed by either not following the most simple instructions on the box or by loosing the samples he was testing. In order to cloak the weakness of this authority, the Defendant engaged Dr. Grodofsky to serve as its reviewing physician and its claims adjudicator. With Grodofsky as Judge, Jury, and Executioner – it is little wonder that his findings were never seriously challenged.

Deferential Review is not automatic as the Defendant contends that they must meet minimal standards of conduct to in order to receive the privilege of deferential review. The Defendant is not entitled to deferential review because it has behaved dishonestly and it has shown outright indifference to the minimum standards of conduct found in the Code of Federal Regulations. In this vein, the Plaintiff offered three separate grounds on which the Defendant's actions could be challenged. These grounds are as follows:

(A) Defendant failed to observe procedural requirements found in the Code of Federal Regulations governing how an ERISA claim is to be processed by an insurance company or any one else, such failings to abide by established minimum procedural standards may constitute a lack of full and fair review and offer the Plaintiff an opportunity for recovery; 29 C.F.R. 2560.503-1

(B) Defendant's plan administrator and individual actors within the Defendant's organization, breached their fiduciary duty to both the Plan (the insurance policy) and to the Defendant, which would allow the Plaintiff an opportunity to seek recovery, <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996;

(C) That the Defendant's administrator's behaved in a way that meets established standards for arbitrary and capricious judgment, and offers the Plaintiff an opportunity to seek recovery from her long term disability plan;

In each of these areas, the Plaintiff introduced numerous sub-arguments and examples.  It took a great deal of time and paper to adequately discuss all of the events at issue.  The Plaintiff noted half a dozen problems under the Federal regulations alone which could individually show that the Plaintiff did not receive a full and fair review from the Defendant.

The Defendant claims that all of these arguments are confusing and disrespectful to its august status as an insurance company.  The Plaintiff argues that these arguments taken as a group show that the Defendant failed to process this claim in a manner proscribed by law or even for the benefit of its share holders.  This lack of respect for minimum standards of conduct as suggested by the Secretary of Labor is designed to both protect the Defendant from unnecessary litigation as well as to assure the Plaintiff of certain minimum standards.

**III.    Dr. Grodofsky was engaged in a pecuniary relationship with UNUM**

The administrative record states the following about the relationship between Dr.

Grodofsky and UNUM:

    (a)  Dr. Grodofsky states that he was paid by Unum; (UACL 620-621)

    (b)  Unum states that it was going to pay Dr. Grodofsky; (UACL 375)

    (c)   Dr. Grodofsky performed additional tasks for UNUM including examining

        documents and participating in a round table discussion and other tasks.

        (UACL 400, 563-568, 584-586)

The Plaintiff is wholly unclear as to how the Defendant continually states that Dr.

Grodofsky and UNUM did not have a pecuniary relationship that amounted to an

employment relationship.  Both Unum and Dr. Grodofsky indicate in the administrative

record that a relationship of payment for services existed. (UACL 375, 620) The

Defendant argues in its last writing that Dr. Grodofsky was mistaken about his income

and that the actor on UNUM's side of the arrangement was acting without authority when

paying Dr. Grodofsky but was justified in using the fruits of Doctor Grodofsky's labor.

The Defendant further argues that just because there is offer and receipt of payment for

services that it does not necessarily arise to being compensation – it could be something

else.  This argument defies not only common sense but also well-established rules of

analysis found in the Federal Tax Regulations.  Payment for services equals

compensation for services.  (Emphasis added)  Compensation establishes that there is

some kind of employment relationship. Old Colony Trust v. Commissioner of Internal

Revenue Service, 279 U.S. 716, 73 L. Ed. 918, 49 S. Ct. 499, (1929)

**Conclusion**

The Court should allow the matter of <u>Neeb v. Unum</u> to proceed. The Plaintiff prays that the Court agree with her position and find that the Defendant acted in a manner which was both arbitrary and capricious.

(EXHIBIT A)

# SUMMARY OF FACT(S) AND LAW

| | | Source[1] | UACL* |
|---|---|---|---|
| 1. | Between 1988 and 1991, the Plaintiff was examined by Dr. Jonathan Bell of Danbury, Connecticut. During the course of several examinations using a scratch test – Dr. Bell determines that Laura Neeb has allergies to ragweed, dust mites, and maple tree pollen. Dr. Bell does not test Laura Neeb for allergies to red peppers as a test is not readily commercially available.<br><br>Dr. Bell treats Ms. Neeb for her asthma and allergies until 1999. | Unum Doc 235821<br><br>Pps 153-183,<br><br>Test results<br><br>188-190 | 160-190, 153-155 |
| 2. | In 1991, Laura Neeb has problems with her asthma that Dr. Bell links to ragweed allergies. Dr. Bell prescribes a program of dust avoidance and recommends that Ms. Neeb use a Hepa Filter | Unum Doc 235821<br><br>Pps 164-166 | 177-179 |
| 3 | In 1993, Laura Neeb has further problems with breathing which are attributed to her asthma. Upon Dr. Bell's recommendation, Laura Neeb is granted a parking spot in the garage at Danbury Hospital to avoid allergens | Unum Doc 235821<br><br>p. 175 | 168 |
| 4 | In November 1996, Dr. Alexis Gopal finds acutely exacerbated asthmatic conditions in Laura Neeb. Dr. Gopal begins to treat Ms. Neeb with significantly stronger medications and with the steroid Prednisone | Submitted to Unum with the 3rd appeal. | Withheld By Defendant |
| 5 | On July 4, 1998, the Plaintiff became itchy and flushed while cutting red peppers with a friend. This is subsequently diagnosed as the first episode of anaphylaxis based on red peppers. | Unum Doc 235821<br><br>p. 239 | 105 |

---

[1] The Plaintiff has received the administrative record in documents numbered as Unum Legal Department Document Number 235821 and Unum Legal Department 235837. This column refers to the pagination used in those documents.

* The Plaintiff has also noted that there is a numbering scheme noted as "UACL" which seems to approximate the numbering that the Defendant is calling "administrative record".

| | | |
|---|---|---|
| 6 | On July 9, 1998, the Plaintiff ate a salad that had been garnished with red peppers.  She experiences the following conditions: Flushing of the skin; chest tightening; shortness of breath; and light-headedness.  She self administers Proventil and Benadryl and seeks treatment in the emergency room. | Unum Doc 332 235821 <br><br> p. 11 |
| 7 | On July 9, 1998, the Plaintiff is treated in the Emergency Room at Danbury Hospital.  A diagnosis of allergic reaction to red peppers is given by Dr. Patrick Broderick, MD. | Unum Doc 279, 353 235821 <br><br> p. 64 <br><br> Unum Doc 235837 <br><br> p. 432 |
| 8 | On July 17th, 1998 Dr Jonathan Bell examines the Plaintiff and finds that she is suffering from an allergy to Red Peppers that has persisted for a long period of time, which has affected her asthma | Unum Doc 156-159 235821 <br><br> Pps 184-187 |
| 9 | On August 11th, 1998 the Plaintiff experiences another reaction to exposure to red peppers.  She self-administers Benadryl. | Unum Doc 336, 319 235821 <br><br> p. 7, 25 |
| 10 | On August 13th,1998,  the Plaintiff experiences chest tightening after a jar of red peppers is opened in her presence.  She self administers Benadryl | Unum Doc 319 235821 <br><br> p. 25 |
| 11 | On September 1, 1998, the Plaintiff is examined by Dr. Cabral of the Danbury Hospital for her chest tightness.  She is given an echo-cardiogram | Unum Doc 195 235821 <br><br> p. 148 |
| 12 | On March 13, 1999 the Plaintiff and her husband Robert embark on a cruise aboard the ship, *Rhapsody of the Seas*.  She has numerous allergic reactions to red peppers and is treated in the ship's infirmary for 3 anaphylactic shocks between March 14-18, 1999.  The anaphylactic shock episode of March 16 and March 18 require intravenous medication and an overnight stay in the ship's infirmary. | Unum Doc 186 235821 <br><br> p. 157 |
| 13 | On March 22, 1999, the Plaintiff visits her allergist, Dr. Bell of Danbury Connecticut.  Dr. Bell diagnosis is anaphylactic shock brought on by exposure to red peppers and an exacerbation of the Plaintiff's asthma. | Unum Doc 185-188 235821 <br><br> p. 155-158 |

| | | |
|---|---|---|
| 14 | On March 24, 1999 the Plaintiff telephones, Dr Bell complaining of chest tightening and hoarseness. Dr. Bell prescribes the anti-histamines Claritin and Benadryl. Dr. Bell also sends the Plaintiff a pamphlet on food avoidance | Unum Doc 185 235821<br><br>p. 155 |
| 15 | On May 3, 1999, the Plaintiff is extensively tested and examined by Dr. William Johns and Dr. Cabral of the Danbury Hospital Cardiology Department and her results are further examined by Dr. David Copen of the Yale University Hospital. The Plaintiff is found not to have any heart ailments but food allergies are listed as a secondary diagnosis for her chest tightness problem. | Unum Doc 202-246 235821<br><br>Pps 101-145 |
| 16 | On July 9, 1999 the Plaintiff is treated by Dr. Patrick Broderick of the Danbury Hospital Emergency Medical Department. She is admitted to the hospital after being exposed to red pepper. She is diagnosed with anaphylaxis brought on by exposure to red peppers | Unum Doc 262-263 235821<br><br>p. 80-81 |
| 17 | On September 17, 1999 the Plaintiff becomes hoarse and experiences throat tightening when exposed to red peppers | Unum Doc 317 235821<br><br>p. 26 |
| 18 | On September 30, 1999, the Plaintiff experiences throat tightening, hoarseness and lumps while in the cafeteria at Danbury Hospital | Unum Doc 317 235821<br><br>p. 26 |
| 19 | On October 19, 1999, the Plaintiff experiences an allergic reaction to cooking odors coming from the hospital cafeteria located below her office – she is obliged to leave work | Unum Doc 317 235821<br><br>p. 26 |
| 20 | On October 26, 1999, the Plaintiff experiences an allergic reaction to cooking odors emanating from the hospital cafeteria located below her office – she is obliged to leave work | Unum Doc 317 235821<br><br>p. 26 |
| 21 | On October 27, 1999, the Plaintiff asks her supervisor Mark Moreau to work at home as a result of problems that she has been having with the cooking odors emanating from the hospital cafeteria. | Unum Doc 317 235821<br><br>p. 26 |
| 22 | On October 28, 1999 the Plaintiff is treated in the emergency room at Hartford Hospital after being exposed to red peppers. | Unum Doc 333 235821<br><br>p. 10 |
| 23 | On October 29, 1999 the Plaintiff contacts her allergist Dr. Bell and requests to see Dr. Adrianne Buffaloe, MD in New York. Dr. Bell notes the call in his files and a subsequent call that he receives from the Danbury Hospital protesting that Dr. Buffaloe is out of network and her fees will not be paid by the hospital | Unum Doc 189 235821<br><br>p. 154 |

| 24 | Dr. Buffaloe's file is not in the administrative record. There are references to the file being present and under review – when the Plaintiff called to inquire if her file was complete – she was informed that the file was under review. It is unclear if the file was lost, not included, or unavailable. | Unum Doc 362 235837<br><br>p. 423 |
|----|----|----|
| 25 | The Plaintiff is examined by Marshall Grodofsky of Connecticut Allergy in West Hartford, Connecticut on November 17, 1999. | Unum Doc 128, 625 235821<br><br>p. 215<br><br>Unum Doc 235837<br><br>p. 160 |
| 26 | Dr. Grodofsky interviews the Plaintiff very quickly and records notes of approximately 45 words | Unum Doc 125 235821<br><br>p. 218 |
| 27 | Dr. Grodofsky performs his assessment of the Plaintiff without inquiring as to whether or not the Plaintiff is taking medication such as anti-histamines, which are known to alter scratch test results. | Unum Doc 611, 125 235837<br><br>174<br><br>Unum Doc 235821<br><br>218 |
| 28 | Dr. Grodofsky did use any prior medical history in preparing his opinion and diagnosis | Unum Doc 613-617 235837<br><br>p. 169-172 |
| 29 | Dr. Grodofsky did not test the Plaintiff for an allergy to red peppers in his office | Unum Doc 608 235837<br><br>p. 177 |
| 30 | Dr. Grodofsky took a blood sample to use for a modified Rast Test | Unum Doc 608 235837<br><br>p. 177 |

| 31 | Dr. Grodofsky ordered a Blood test for Allergies (Modified RAST test) for the following items: | Unum Doc 130 235821 |
|---|---|---|
| | - Shrimp | p. 213 |
| | - Tomato | |
| | - Potato | |
| | - Cayenne Pepper | |
| | - Green Pepper | |
| | Dr. Grodofsky neither sought nor received a blood test for an allergic reaction to red peppers | |
| 32 | Dr. Grodofsky stated that he sent the Plaintiff's blood sample for testing at the Medical Center of Virginia in Richmond Virginia on December 9, 1999 | Unum Doc 634 235837 p. 151 |
| 33 | Dr. Grodofsky received a receipt for a sample of the Plaintiff blood to be tested with a RAST assay from the Medical Center of Virginia on December 9, 1999 | Unum Doc 129 235821 p. 214 |
| 34 | On December 8, 1999 – Dr. Grodofsky received the results of a modified RAST test from a lab in suburban Washington DC. Dr. Grodofsky received the results from a different lab before he sent out the sample of the Plaintiff's blood | Unum Doc 130 235821 p. 213 |
| 35 | On appeal, the Plaintiff protested the use of any form of *MODIFIED* RAST as they have been deemed unreliable by British Authorities and have been strongly criticized by British Authorities | Unum Doc 685 235837 p. 100 |
| 36 | Plaintiff leaves Dr. Grodofsky's office without paying for the appointment from her own funds after Grodofsky demands to treat the patient rather than merely render a second opinion as had been the original arrangement. Dr. Grodofsky is out of network for the Plaintiff's health plan. The appointment is approximately 45 minutes long | Unum Doc 625-628 235837 Pps 160-163 |
| 37 | Dr. Grodofsky renders an opinion on his visit without the Plaintiff. Despite the fact, that Dr. Grodofsky has neither tested the Defendant for her allergic reaction nor availed himself of any medical history, | Unum Doc 133-137 235821 Pps 207-210 |

| | | |
|---|---|---|
| 38 | Dr. Grodofsky states that he "possibly" regarded this opinion as irrelevant | Unum Doc 617 235837 <br><br> p. 168 |
| 39 | On December 7th, 1999, the Plaintiff takes a three-month leave of absence from her employment at Danbury Hospital citing her recent allergic episodes. This date is listed on her application as the date of her initial disability | Unum Doc 3 235821 <br><br> p. 339 |
| 40 | On January 4th, 2000 the Defendant is examined by Dr. Robban Sica a medical doctor, practicing in the area of environmental medicine. Dr. Sica performs extensive tests on the Plaintiff in the hopes of finding multiple chemical sensitivity disorder but instead finds elevated IgE levels characteristic of allergy. | Unum Doc 24 <br><br> 235821 <br><br><br> p. 319 |
| 41 | On February 10, 2000, Romulo Salazar of the Danbury Health Systems files a claim for long term disability insurance with Unum on behalf of the Plaintiff, Laura Neeb. | Unum Doc 2 235821 <br><br> P. 341 |
| 42 | Danbury Hospital submits a description of Laura Neeb's duties, which require her to perform her functions at Danbury Hospital. Mark Moreau who is the Plaintiff's supervisor at the hospital states that it would be unable to make work place accommodations to her condition. | Unum Doc 4 # <br><br> 235821 <br><br> P. 339 |
| 43 | Defendant performs an occupational assessment of the Plaintiff's position as a clinical nurse auditor at Danbury Hospital. Defendant finds that the Plaintiff's position involves significant pulling and lifting with weights in excess of twenty pounds. <br><br> The Defendant's occupational assessment through its description of duties "pulling cart in medical records department" suggests that the job must be performed at Danbury Hospital | Unum Doc 5, 32-37 # <br><br> 235821 <br><br> P. 338, Pps 306-311 |
| 44 | Dr. Sica's materials are examined by Unum Employee Jeanne Flaherty and not by an RN named Aliberti. Ms. Flaherty throughout the administrative record is referred to as a "Senior Disability Benefits Specialist" and appears to not possess any title indicating medical training. Despite any apparent training in reading medical information, Ms. Flaherty makes repeated references to the word "chemical" and appears to be attempting to turn the claim into a matter of multiple chemical sensitivity disorder rather than anaphylaxis. Further clarification is sought. | Unum Doc 29-30 235821 <br><br><br> p. 312-313 |

| 45 | Jeanne Flaherty speaks with Romulo Salazar of Danbury Hospital foundation and is informed that Mr. Salazar believes that the Plaintiff may be away from work for a period of a year. | Unum Doc 30 235821 |
| | | p. 312 |
| 46 | On February 23, 2000 the Plaintiff is hospitalized at the Lower Keys Hospital in Key West, Florida. She is examined by Dr. Roger Stratt.  She has self administered Anti-Histamines with an epi-pen | |
| 47 | April 11, 2000 – Unum employee Shannon Haskell notifies the Plaintiff that she will be the new Senior Disability Benefits Specialist for her claim | Unum Doc 343 235837 |
| | | p. 442 |
| 48 | On May 10th, 2000, Dr. Grodofsky was faxed materials by Unum. Dr. Grodofsky was given responsibility for "objectively" analyzing this information | Unum Doc 767 235837 |
| | | P 15 |
| 49 | On May 24th, 2000 Unum had a "roundtable" discussion of the Plaintiff's claim where it was determined that because she did not see Unum's Doctor for a continuing course of treatment that she should be denied disability benefits. "Phone call to Dr. Grodofsky confirms that he was not supportive of disability" | Unum Doc 768, 387 235837 |
| | | p. 17,398 |
| | There is neither record of whom attended this conference nor any other information other than a call was made to Grodofsky | |
| 50 | On June 23rd a second roundtable was held without any indication of who was to attend.  The narrative content was "date last payment made – none" and "need to make claim decision" no other information from this roundtable discussion seems to have been recorded | Unum Doc 390, 393 235837 |
| | | p.395, 392 |
| 51 | On July 1, 2000 Unum's Senior Disability Specialist Shannon Haskell telephoned Romulo Salazar of the Danbury Hospital to inform him that no evidence existed to support Ms. Neeb's claim and to tell him that she would not be available for his calls since she would be out of the office.  She got a message that said a cell phone was down and did not pursue the matter further | Unum Doc 395, 397 235837 |
| | | p. 390, 388 |
| 52 | On July 1, 2000 a letter of denial is written by Senior Disability Specialist Shannon Haskell stating that the Plaintiff is to be denied benefits because she has not pursued a course of treatment at her own expense under the direction of Dr. Grodofsky.  Dr. Grodofsky has previously stated that he is employed by UNUM and UNUM has offered to compensate Dr. Grodofsky | Unum Doc 398-401 235837 |
| | | Pps 384-387 |
| | | 375,620 |

14

| | | |
|---|---|---|
| 53 | On July 3, 2000 – Unum's Senior Disability Specialist received a review of her letter of July 1st in which she denied the Plaintiff's benefits.  Ms. Labonte is apparently, also, not a licensed Medical Professional but some sort of supervisor to Shannon Haskell. A dialogue takes place as to how best to bolster the authority of the opinion by referring to the Doctor of Record's (**Dr. McBride**) specialty – which is known to neither individual.  After a third individual named "janio" is consulted it is determined that Dr. McBride specializes in occupational medicine not environmental medicine. | **Unum Doc  402** 235837  p. 383 |
| | Sharon Labonte then "OKs" the rejection letter | |
| | Labonte instructs Haskell to ignore data from Dr. Rea in Texas as it was prepared after the time of the Plaintiff's application for long term disability benefits. | |
| 54 | On July 7, 2000 Shannon Haskell states in her notes that "she is not a medical expert" and she must rely upon medical doctors. | **Unum Doc  409** 235837 |
| | Upon receiving a request from the Plaintiff to examine the files sent to UNUM by Rea in Texas, Haskell informs the Plaintiff that UNUM did not have these files (which was true as these files had been earmarked for Dr. Grodofsky's  review) | p. 376 |
| | Haskell requests that the Plaintiff provide UNUM with another copy of Dr. Rea's medical data at great expense ($2 per page) or face the loss of her appeal | |
| 55 | Plaintiff hires Law Firm Febrello & Conti of Torrington Connecticut and requests that a copy of the administrative record be sent to her lawyers. | **Unum Doc  412** 235837  p. 373 |
| 56 | On August 21, 2000 Unum finds its copy of Dr. Rea's Data and a copy is sent to the Plaintiff.  Dr. Rea's data has specific tests for red peppers and is done with the assistance of prior medical history, complete and thorough interviewing over the course of three weeks and the tests are done in control circumstances.  Dr. Rea finds that the Plaintiff is suffering from an anaphylactic reaction to exposure to red peppers. | **Unum Doc  414-517,** 235837    552-554  **Pps 267-371**  **Opinion Letter**  231-233 |
| 57 | On September 26, 2000 the Plaintiff formally requests an appeal to her claim and formally seeks to introduce the material provided by Dr. Rea.  She also requests that the materials offered from her 3 emergency room visits, and Dr. Sica also be reviewed. | **Unum Doc  555-560** 235837  225-230 |

| | | | |
|---|---|---|---|
| 58 | On October 2, 2000 Unum's Senior Disability Benefits Specialist Shannon Haskell acknowledges that she has received the Plaintiff's request for an appeal | 224 | 561 |
| 59 | On October 18, 2000 Unum hires a physician to "independently" review the data offered by Dr. Rea. Dr. Broda is not given and thus does not read the materials relied upon by Unum from Dr. Grodofsky. As a result, Dr. Broda does not know that Dr Grodofsky did not: | Unum Doc 235837<br><br>Pps 221 - 222 | 563-564 |

-utilize any medical history in preparing his work;

- that Dr. Grodofsky had lost control of the blood control samples used in his blood test and received his results prior to shipping out the serum sample;

- that Dr Grodofsky utilized a test that has been outlawed in Great Britain and even strongly criticized by Unum;

- that Dr. Grodofsky did not adjust his tests for medications used by the Plaintiff;

-that Dr. Grodofsky had not been paid for his work and regarded his work product as irrelevant and meaningless at the time it was prepared

- that Dr. Grodofsky never tested the Plaintiff for an allergy to red peppers

Based on information that Unum said orally that it possessed, Dr. Broda stated that he did not believe that the Dr. Rea's data could overturn whatever information the Defendant claimed to possess. Dr Broda's examination was incomplete because it did not examine the entire file but only the data offered by the Plaintiff from Dr. Rea. By accepting Dr. McBride's oral statement at face value, Dr. Broda failed to perform and examination that was either independent

| | | | |
|---|---|---|---|
| 60 | Unum issues its first administrative appeals rejection letter. The letter is written by Shannon Haskell who now holds the title of lead customer care specialist. It offers no advice on how the Defendant may improve her information other than to repeat the demand that Dr Grodofsky, a physician in Unum's employment be allowed to treat the Defendant at her own expense | Unum Doc 235837<br><br>217-220 | 565-568 |
| 61 | November 7, 2000 Shannon Haskell sends her letter to Sharon Labonte for approval. | Unum Doc 235837<br><br>p. 217 | 568 |

| 62 | November 14, 2000 Plaintiff requests a second appeal and receives a letter from Sandy Kaszerman, Lead Appeals Specialist, acknowledging her request | Unum Doc 235837 p. 214 | 571 |
| 63 | On January 22, 2001 Sandy Kaszerman, Lead Appeals Specialist for Unum issues a second administrative appeals denial. No supporting analysis of any kind is recorded in the administrative record. In this denial, Kaszerman repeats the demand the Plaintiff undergo treatment at the direction of Marshall Grodofsky, offers no notice on how to cure the Plaintiff's condition and he introduces a new theory of the Defendant's illness as a grounds for denial even though this theory is both unsubstantiated and not at issue in the claim | Unum Doc 235837 p. 199 - 201 | 584-586 |
| 64 | On September 26, 2002, the Law Offices of Michael Tobin submit an occupational assessment of Laura Neeb's employability to the Defendant for inclusion in the administrative record. | Unum Doc 235837 p. 132 | 563 |
| 65 | On February 13, 2003 Unum receives a third appeal and a copy of a deposition from Marshall Grodofsky, in which Grodofsky confesses to his sloppy work product. The Plaintiff brings up numerous new grounds for challenging the Defendants previous rulings | Unum Doc 235837 88-114 | 671-697 |
| 66 | On February 28, 2003 Lead Appeals Specialist Sandy Kaszerman issues a letter to the third appeal stating that he considers the matter closed and administratively exhausted | Unum Doc 235837 87 | 698 |

## PLAINTIFF'S PROPOSED APPLICATIONS OF FACT AND LAW

1   The Plaintiff argues that this claim is governed under the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. 1165 (a) (1) (b).

2   Under §502(a)(1)(b) of ERISA, the Plaintiff may bring an action in a federal Court to seek payment of disability insurance

3   Claimant submitted her claim to the UNUM Life Insurance Company of America on February 29, 2000. Claimant sought long-term disability coverage as the result of a series of episodes of anaphylaxis brought on by exposure to red peppers.

4   The Plaintiff contends that under ERISA, Congress has authorized the Secretary of Labor to promulgate regulations governing the administration of benefits such as the ones sought in the instant matter.

5   The regulations governing the processing of a long-term disability insurance claim are found in the Code of Federal Regulations at 29 CFR 2560.503-1.

6   Failure to comply with the procedural standards established in the code of Federal Regulations shall constitute a failure to conduct a full and fair review and shall be deemed to be an abuse of discretion. Soron v. Liberty Life, 318 F. Supp. 2d 19 (ND NY 2004). Cook v. N.Y. Times Co. Group Long Term Disability Plan, 2004 U.S. Dist. LEXIS 1259 (S.D.N.Y. January 27, 2004), Juliano v. Health Maintenance Organization of New Jersey, Inc., 221 F.3d 279, 287 (2d Cir. 2000)

Plaintiff asserts that the Defendant denied her full and fair review for reasons because it failed to abide by the minimum procedural requirements of the CFR.  These failings include:

7   **The Defendant may not prescribe a series of fees or medical treatments under the supervision of one its physicians as a threshold requirement to receiving benefits under a long-term disability insurance policy. 29 C.F.R. 2560.503-1(b)(3);**

8   Dr. Grodofsky states that he is a UNUM employee

9   Dr. Grodofsky is offered compensation by Dr. MacBride a supervising physician with UNUM, who is supervising the Plaintiff's claim.  Dr. McBride offers to compensate Dr. Grodofsky for assistance with the Plaintiff's claim

10  Unum's first and second rejection letters state
          *- You personally visit a doctor as frequently as is medically required.....*
          *- You are receiving the most appropriate treatment and care...by a doctor*
               *whose specialty or experience is the most appropriate for your disabling*
               *condition(s)....*
          *Doctor Grodofsky specializes in the treatment of a treatment of asthma and allergies...You did not follow up with Dr. Grodofsky as recommended*

621

375

404-405,
565-568

| 11 | In the Plaintiff's third appeal in which she alerted the Defendant was seeking to direct a series of treatments in contravention to the requirements of the rules found in the code of federal regulations at 29 CFR 2560.503-1(b)(3) – that the Defendant simply chose not to read the appeal at all (UACL 698) | 698 |
|----|---|---|
| 12 | On three separate occasions, the Defendant demanded a course of additional treatments at the Plaintiff's expense under the direction of a physician controlled by the Defendant.  That such conduct was in violation of the regulations established in 29 CFR 2560.503-1(b)(3). | |

13    The Second CFR violation that the Plaintiff notes is as follows

**The Defendant may not provide deference to a physician who has provided an initially adverse opinion and include that physician in the claims adjudication process. 29 CFR 2560.503-1(h)(2)**

14    Dr. Grodofsky served the Defendant in the following assignments during the claims adjudication process within the Defendant's organization.

| | | |
|---|---|---|
| (1) | Dr. Grodofsky consulted with Dr. McBride and established in conversations that there was purportedly "no immunological basis" for the Plaintiff's illness | 400, 563-564 |
| (2) | If the Court does not find that Dr. Grodofsky was employed by the Defendant, Dr. McBride's correspondence strongly suggests that Grodofsky was at least a consulting physician; | 375 |
| (3) | That Dr. Grodofsky was consulted by supposedly impartial "roundtable" panels which were charged with examining the Plaintiff's claims; | 387, 768 |
| (3) | Dr. Grodofsky's lack of support for granting the Plaintiff's claims is listed as a central reason for denying the Plaintiff benefits | 400, 563-568, 584-586 |

15    Federal Common Law states that the use of a physician who has issued as a consulting physician that is relied upon by a Defendant is a fatal flaw in its review for a lack of impartiality and constitutes a lack of full and fair review. <u>Steinberg v. Railroad Maintenance and Industrial Health and Welfare Fund</u>, 2004 U.S. Dist. LEXIS 6371; 33 Employee Benefits Cases (BNA) 1564 (ND Ill 2004).

16    The third CFR violation that the Plaintiff notes is as follows:

**Defendant's improperly relied upon undocumented conversations as a primary ground to deny the Plaintiff's claims. Reliance upon such undocumented sources violated rules established in the Code of Federal Regulations and constitutes a lack of "full and fair review". 29 CFR 2560.503-1(g)(1).**

17    Dr. Grodofsky is recorded as having stated as a consulting physician that there was "no immunological basis" for the Plaintiff's symptoms. The analysis which supports this conclusion statement is unavailable                    375-376, 400, 563-564

18    Federal Common law states that when an unrecorded conclusion is used as authority to support denial of a claim for long-term disability benefits that there is a lack of full and fair review because the Plaintiff may not challenge the analysis that lead to such a conclusion. Alternative Care Sys v. Metropolitan Life Ins. Co., 1996 U.S. Dist. LEXIS 1705 (SD NY 1996). Wolfe v. J.C. Penney, 710 F.2d 388 (7th Cir. 1983)

19    A Defendant insurance company must have information upon which relies in a written and recorded format in its entirety. In order to for the Defendant to rely upon the conclusion the rest of the analysis which supports that conclusion must be written. Russo v Hartford Life Insurance, 2002 U.S. Dist. LEXIS 26566 (SD CA 2002)

20    The Defendant relied upon an unsupported conclusion without any written or recorded analysis to support that conclusion. The Defendant's reliance on that conclusion under 29 CFR 2560.503-1(g)(1) did not constitute full and fair review.

21    The fourth CFR violation alleged is as follows:
**Plaintiff was not provided with full and fair review under the code of Federal Regulations because she was not provided with an explanation of how to cure defects in her claim. 29 CFR 2560.503-1(f)(3)**

22    The Plaintiff sought specific advice from the Defendant on what information was necessary to perfect her claim and was rebuffed.                    572

23    In none of its denial letters did the Defendant ever discuss the applicable standards for showing disability due to chronic anaphylaxis.                    398-401, 565-568, 584-586

24    Common law authority holds that, at a minimum, the plan administrator must communicate and make available without charge the standard on which it relied to determine whether the claimant suffered from the disease. Cook v. New York Times, 2004 U.S. Dist. LEXIS 1259 (SD NY Jan. 30, 2004)

25    As the Defendant never provided the Plaintiff with the applicable standards on which it was relying even when asked directly, the Plaintiff was not provided with full and fair review.

26      The fifth CFR violation alleged is as follows:
        **The Defendant never communicated permissible grounds on
        which it was denying the Plaintiffs claim and thus did not
        provide full and fair review of her claim. 29 CFR 2560.503-
        1(f)(3)**

27      The Defendant cites the following reasons for denying the                398-401,
        Plaintiff's claim                                                        565-568,
            - the Plaintiff did not follow up with Dr Grodofsky                   584-586
            - that Dr. Grodofsky was the only Doctor who should treat the
              Plaintiff
            - that Dr Grodofsky stated in unsubstantiated conversations that
              there was "no immunological basis" for the Plaintiff's
              symptoms

28      Demands for the Defendant's captive Doctor to provide medical
        treatment as an ongoing expense to the Plaintiff is not permissible
        under the Code of Federal Regulations.  29 CFR 2560.501-1(b)(3)
        This argument is outline in panels 7-12 of the legal arguments
        section of this outline

29      Use of a Doctor who has previously provided adverse testimony as
        a consulting physician and to rely upon such opinions is
        impermissible under the Code of Federal Regulations. 29 CFR
        2560.503-1(h)(2). Steinberg v. Railroad Maintenance and Industrial
        Health and Welfare Fund, 2004 U.S. Dist. LEXIS 6371; 33
        Employee Benefits Cases (BNA) 1564 (ND Ill 2004).

30      Use of a Doctor's opinion which is an unsupported conclusion in
        nature without any available supporting documentation may not be
        used under the Code of Federal Regulations. 29 CFR 2560.503-
        1(g)(1).  Alternative Care Sys v. Metropolitan Life Ins. Co., 1996
        U.S. Dist. LEXIS 1705 (SD NY 1996). Wolfe v. J.C. Penney, 710
        F.2d 388 (7th Cir. 1983)

31      Some Courts have held that use of opinion evidence which is not
        entirely written and available for the Plaintiffs review is a violation
        of the Code of Federal Regulations. 29 CFR 2560.503-1(g)(1)
        Russo v Hartford Life Insurance, 2002 U.S. Dist. LEXIS 26566
        (SD CA 2002)

32      Even if the first series arguments are unpersuasive in their own
        right, they show that the Defendant offered no permissible basis for
        denying the Plaintiff's claim under the code of Federal Regulations
        and thus violated the notice requirement of the CFR.

33      The sixth CFR violation alleged is as follows:
        **The Defendant failed to provide impartial review of the
        evidence both at the time of administrative appeal. 29 CFR
        2560.503-1(f)**

| | |
|---|---|
| 34 | - Dr. Lawrence Broda simply could not have read the actual source material in this case, he made graphic factual errors | |
| | - Dr. Broda missed out on the following factual data | 186,522-534 |
| |   - 4 Hospitalizations | |
| |   - Dr. Grodofsky's admitted failure to use medical history before issuing a diagnosis | 613-617 |
| |   - Dr. Grodofsky's inability to show even well documented and long known allergies from which the Plaintiff suffered | 114 |
| |   - Dr. Grodofsky had obviously lost control of his blood test samples | 129,130, 133-137 |
| |   - Dr. Grodofsky issued his opinions prior to having even faulty proof | 128, 617 |

35    The Plaintiff contends that Dr. Broda made these mistakes by relying on memoranda prepared by Nurse Sharon Davenport which also includes the same series of un-reported information

36    Dr. Broda's failure to review actual source data and to rely on memoranda prepared by non-medical professionals constitutes a lack of impartial review. Shaw v. McFarland Clinic, 231 F. Supp. 2d 924 (S.D. IA 2002) *aff'd* Shaw v. McFarland Clinic, 2004 U.S. App. LEXIS 6408 (8th Cir. Iowa, April 5, 2004)

37    Dr. Broda further relies upon Dr. Grodofsky's un-provable and un-supported assertion that there was no immunological basis for the Plaintiff's symptoms      563-564

38    Use of information by an independent examiner which is speculative is arbitrary and capricious. Carney v. IBEW Local 98, 66 Fed. Appx. 381; 2003 U.S. App. LEXIS 9467 (3d Cir May 16 2003) *cert denied* IBEW v. Carney, 2003 U.S. LEXIS 9008 (December 8, 2003).

39    **The Plaintiff advances the Second Family of Arguments that the Defendant breached its fiduciary duty in administering this claim.**

40    The First Fiduciary Breach Argument Advanced by the Plaintiff is as follows:
**The Defendant through its agents committed a breach of Fiduciary Duty by modifying the Plaintiff's claim in the hopes of making the illness fit the tests available.**

| | | |
|---|---|---|
| 41 | Nurse Davenport expanded the definition of the Plaintiff's illness to include non-claimed and non-existent allergies to green peppers and cayenne peppers in an apparent attempt to use Dr. Grodofsky's blood test results to disprove the Plaintiff's claim | 350 |
| | This alteration appears after Nurse Davenport states that Dr. Grodofsky's testing is incomplete and unfinished | 344-348 |
| 42 | Federal Common law authority that such ERISA claims alteration in an attempt to deny a claim is a bad faith breach of fiduciary duty by an ERISA plan administrator and will provide a sustainable ground for overturning that decision. D'Emanuele v. Montgomery Ward & Co., 1987 U.S. Dist. LEXIS 16830 (CD CA 1987) | |
| 43 | The Second Breach of Fiduciary Duty Advanced by the Plaintiff is as follows: **The Defendant breached its fiduciary Duty when it lied to the Plaintiff about its lack of possession offered by Dr. William Rea – dishonesty has been held to be contrary to a fiduciary duty** | |
| 44 | Following the initial denial of her benefits, the Plaintiff requested that the Defendant review her file with information provided to the Defendant by Dr. William Rea of Dallas, Texas | |
| 45 | The Defendant responded that it did not possess Dr. Rea's information and thus could not review Dr. Rea's information | 409 |
| 46 | There are several references in the administrative record that show that the Defendant did in fact possess Dr. Rea's information prior to the request for review | 389,402 |
| | In fact the Defendant's lead physician on the matter deemed Dr. Rea's material as not worth reading because it originated with a specialist | 389 |
| 47 | The US Supreme Court has held that acts of deliberate dishonesty by an ERISA plan administrator may strip the plan administrator of deferential review. Varity v. Howe, 516 U.S. 489, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996) | |
| 48 | The Third Breach of Fiduciary Duty Advanced by the Plaintiff is as follows: **Dr. Grodofsky who wore the following hats: (a) physician who provided the only adverse testimony; (b) consulting physician; and (c) judge of the Plaintiff's ability to receive benefits – never disclosed his own acts of dishonesty and incompetence** | |
| 49 | Dr. Grodofsky was responsible for reviewing other physicians materials | 767 |
| 50 | Dr. Grodofsky participated in the roundtable discussions and served as the final arbiter as to whether or not the Plaintiff would receive her benefits | 768, 387 |

51    Dr. Grodofsky's failings have been enumerated repeatedly in this
      narrative

      - Dr. Grodofsky did not use medical history                          613-617

      - Dr Grodofsky did not interview the Plaintiff meaningfully            612, 125

      - Dr. Grodofsky used inaccurate tests and then further polluted his    133-137,
        results                                                             611, 129-
                                                                            130

      - Dr. Grodofsky lost control of his blood samples
                                                                            129,130
      - Dr Grodofsky never tested the Plaintiff for the substance which
        caused her anaphylaxis                                              608

52    Dr. Grodofsky's work is so startlingly sloppy as to be deceitful.  He
      did not conform to the standards issued by the American Medical
      Association for diagnosing anaphylaxis.  These standards include:
      - the use of medical history
      - careful testing under controlled circumstances                     681

53    Dr. Grodofsky stated that his work was "possibly irrelevant" when     617
      confronted with inconsistencies

54    The Plaintiff contends that Dr. Grodofsky knew or should have
      known that his work was sloppy as to be deceitful and that his
      continuing role in the claims process was as much to hide this
      sloppiness from being revealed and as such was dishonest

55    The Plaintiff's third family of Arguments is that **the Defendant's
      denial of the Plaintiff's benefits was Arbitrary and Capricious
      because the Denial was not supported by substantial evidence**

56    As noted above in panels 51 and 52, Dr Grodofsky's work was so
      insubstantial and sloppy as to be both incompetent and deceitful

57    Dr. Grodofsky has provided the only authority upon which the
      Defendant has relied in this matter.  Authority exists that a medical
      examiner's conduct may be so incompetent that it can not be held to
      be substantial evidence. Pierce v. American Waterworks Co., 683
      F. Supp. 996 (WD PA  1988)

58    Courts have subsequently examined <u>Pierce</u> and have developed a three-prong test for establishing whether or not evidence offered by a bad medical examiner like Dr. Grodofsky may be considered to fail to be substantial evidence.  The three ingredients to this test are as follows:

1 – The medical examiner relies only upon one document or finding
2 – The medical examiner relies upon actual verifiable evidence
3- The medical examiner diagnosis is based on actual verifiable evidence

<u>LeStrange v. Fortis Benefits Insurance Co.</u>, 2003 U.S. Dist. LEXIS 10045  (ND Iowa June 13, 2003).

59    Dr. Grodofsky did not rely on actual verifiable evidence and did not rely upon actual verifiable evidence in issuing his diagnosis.

60    Under <u>Pierce</u> and <u>Le Strange,</u> Dr Grodofsky has failed to sustain the three very minimal standards that would make his testimony substantial evidence.

61    Dr. Grodofsky is the only authority in support of the Defendant's position.  Without Dr. Grodofsky, the Defendant lacks substantial evidence to sustain its position

62    SUMMARY

Plaintiff has offered 10 different arguments which she believes shows that the Defendant has denied her full and fair review under both Code of Federal Regulations and under federal common law.

She prays that the Court will side with her in this matter and grant her payment of her benefits to at least the current time with attorney's fees

Laura Neeb,
THE PLAINTIFF

BY: _____
Jeffrey R. Heyel, Esq.
68 Main Street
Danbury, CT  06810
Fed. Bar No. ct1955

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, USPS (FIRST CLASS), postage prepaid, this 16th day of November,  2004, to:


Alexander H. Schwartz, Esq.
Attorney at Law
3695 Post Road
P.O. Box 701
Southport, CT 06890-0701


Jeffrey R. Heyel, Esq.