UNITED STATES DISTICT COURT
DISTRICT OF CONNECTICUT

LAURA NEEB,                          :
  Plaintiff,                       :
                                     :
VS.                                  :  Civil No. 3:03CV0307 (AVC)
                                     :
UNUM LIFE INSURANCE COMPANY          :
OF AMERICA,                          :
  Defendants                       :

## RULING ON THE DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

This is an action for damages and equitable relief arising out of the denial of long term disability benefits.  It is brought pursuant to the Employee Income and Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  The plaintiff, Laura Neeb, alleges that Unum Life Insurance Company of America ("Unum"), the claims administrator for her long term disability benefits plan, denied her long term disability benefits for which she qualified.

Unum has filed a motion for judgment on the administrative record.[1] Unum argues that the administrative record supports the denial of benefits, and that it is entitled to judgment as a matter of law because the decision was not arbitrary or capricious.

_____

[1] A "decision on the motion for judgment on the administrative record . . . can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact." Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003).

Neeb responds that the court should overturn Unum's decision because Unum failed to observe the Code of Federal Regulations' procedural requirements, or was otherwise arbitrary and capricious, and that Unum's administrator and individual actors "breached their fiduciary duty to both the Plan (the insurance policy) and to [her]."[2]

The issues presented are whether: 1) Neeb has raised a genuine issue of material fact that Unum improperly denied her application for long term disability benefits by failing to observe the Code of Federal Regulations' procedural requirements; 2) Neeb has raised a genuine issue of material fact that Unum's decision was arbitrary and capricious; and 3) Neeb has raised a genuine issue of material fact that Unum breached its fiduciary duty to her under ERISA.

For the reasons set forth herein, the court concludes that: 1) Neeb has failed to raise a genuine issue of material fact that Unum improperly denied her application for long term disability benefits by failing to observe the Code of Federal Regulations' procedural requirements; 2) Neeb has failed to raise a genuine issue of material fact that Unum's decision was arbitrary and capricious; and 3) Neeb has failed to raise a genuine issue of

---

[2] Although Neeb submitted a memorandum in support of her motion for judgment on the administrative record, no such motion was actually filed.

material fact that Unum breached its fiduciary duty to her under
ERISA.

Accordingly, Unum's motion for judgment on the
administrative record is granted.

## FACTS

Examination of the administrative record, exhibits,
complaint, reply, memoranda, motions, and responses thereto,
disclose the following undisputed, material facts. On June 1,
2000, Unum denied Neeb's claim for long term disability benefits.
Neeb now alleges that Unum wrongfully denied her claim.  The
relevant, material facts are set forth as follows.

Neeb's employer, Danbury Health Systems Inc., ("DHS") a
community hospital, provides its employees with long term
disability insurance covered under a policy ("the Policy") issued
by Unum.  Unum is the administrator of the Policy, and in this
capacity, has the discretion to resolve benefit eligibility
issues.[3]

On February 10, 2000, DHS submitted an application on Neeb's
behalf to Unum claiming benefits under the Policy.  To be
eligible for these benefits, the Policy required that Neeb

---

[3] The Policy provided that "[w]hen making a benefit determination
under the policy, Unum has discretionary authority to determine
your eligibility for benefits and to interpret the terms and
provisions of the policy."

demonstrate through objective medical evidence that she was totally disabled.

Under the Policy, an employee is totally disabled if: during the first two years of long term disability "[the employee is] limited from performing the material and substantial duties of [that employee's] regular occupation due to . . . sickness or injury; and [the employee has] a 20% or more loss in . . . indexed monthly earnings due to the same sickness or injury." To clarify, Unum's policy noted that "LIMITED means what [an employee] cannot or [is] unable to do," and that "Unum will look at [the employee's] occupation as it is normally performed in the national economy, instead of how the tasks are performed for a specific employer or at a specific location." Finally, "[a]fter 24 months of payments, [an employee is] disabled when Unum determines that due to the same sickness or injury, [the employee is] unable to perform the duties of any gainful occupation for which [that employee is] reasonably fitted by education, training or experience."

Neeb argued that her disability consisted of "[shortness of breath], hoarseness, extreme fatigue, severe allergic reactions (anaphylaxis) and chemical sensitivities" which were brought on by an allergy to red pepper. Neeb asserted that the allergy to red peppers began on July 4, 1998 and got progressively worse, until she became totally disabled in December of 1999.

In addition to submitting the application to Unum, DHS submitted a description of her position, a job analysis, and a physician's statement.  The position description defined Neeb's job as "clinical staff auditor," and identified the minimum qualifications, major purpose and primary functions of this position.  The job analysis provided a description of the physical requirements of the clinical staff auditor position.

Robban Sica M.D., one of Neeb's physicians, submitted a physician's statement to Unum that listed Neeb's symptoms as: "dypsnea, shortness of breath, hoarseness, severe allergic reactions (anaphylaxis) and chemical sensitivities."  Sica stated that "chemical odors at work [are] intolerable to [Neeb] due to exacerbation of above symptoms," and listed Neeb's "restriction" as "expos[ure] to inhalants and volatile chemical odors."

Neeb submitted an employee statement to Unum in which she confirmed that the condition causing her disability was "[shortness of breath], hoarseness, extreme fatigue, severe allergic reactions (anaphylaxis) and chemical sensitivities."  In the same employee statement, Neeb identified four doctors who had treated her for the condition that gave rise to the disability claim.  Those four doctors, in the order assigned by Neeb, were: Drs. Elyssa Hart, Adrienne Buffaloe, Robban Sica and Marshall Grodofsky.

On February 18, 2000, Unum received Neeb's disability claim
and assigned the claim to Jeanne Flaherty, a disability benefits
specialist.  On February 21, 2000, Flaherty consulted with
Florence Aliberti, an on-site registered nurse at Unum, and
determined that Neeb's restriction of "no exposure to inhalants
and volatile chemical odors" needed further clarification.

On February 24, 2000, pursuant to this determination,
Flaherty placed a call to Romulo Salazar at DHS to obtain more
information.  According to Flaherty's notes, Salazar stated that
Neeb had requested a leave of absence due to her illness.
Salazar indicated that Neeb's tentative return to work date was
March 28, 2000.  Finally, Salazar stated that Neeb's leave of
absence could be as long as one year.  Flaherty noted that
Salazar was not aware that Neeb had a problem with chemical
odors.

On February 25, 2000, Bruce Hoffman, a certified
rehabilitation counselor, conducted an analysis of Neeb's
position as clinical staff auditor.  Hoffman concluded that
"accommodations can be made allowing for [her] limitation, i.e.,
files being audited in departments [which utilize inhalants or
volatile chemical odors] can be brought to a different safer
location for review."  Hoffman further concluded that "[a]
tentative review of [Neeb's] skills would indicate [that Neeb]

could complete the material duties of sedentary alternative nursing occupations."

On February 29, 2000, Flaherty spoke with Neeb by telephone. Neeb discussed the history of her allergic reactions starting with the July 1998 incident. In July of 1998, Neeb's hand turned red and she became itchy and flushed while she was cutting red peppers. Neeb stated that several days after the initial reaction she ate a salad that had been garnished with red peppers. Although she removed the peppers, Neeb experienced flushing of her skin, chest tightness, shortness of breath, and light-headedness. As a result, Neeb sought treatment in an emergency room. In March of 1999, Neeb had three separate allergic reactions to food she was served on the cruise ship *Rhapsody of the Seas*. Neeb stated that on numerous occasions following the cruise ship incidents she required treatment for the red pepper allergy.

In September and October of 1999, Neeb began to experience throat tightening, hoarseness and lumps following exposure to the odor of red peppers cooking in the hospital cafeteria two floors below her office. On October 19 and 26 of 1999, Neeb left work after smelling red pepper odors from the cafeteria. Neeb further stated that on October 27, 1999, she "ask[ed] her supervisor, Mark Moreau, to work from home as a result of problems that she

ha[d] been having with the cooking odors emanating from the
hospital cafeteria."

From 1988 until November of 1999, Dr. Bell provided Neeb's
allergy treatment.  From April of 1999 until October of 1999,
Neeb also treated with Dr. Hart.  The third doctor treating Neeb
was Dr. Sica.  Sica provided the physician's statement required
by Unum to process the disability claim.  On November 17, 1999,
Neeb sought a second opinion from Dr. Grodofsky.  Grodofsky was
unable to find any objective evidence of allergies, with the
exception of ragweed.  Grodofsky also sent blood samples to be
tested.[4]  The results of the blood tests were normal and failed
to establish any objective evidence of a red pepper allergy.[5]
Neeb did not see Dr. Grodofsky after the initial appointment on
November 17, 1999.

On March 28, 2000, Dr. Sica wrote a letter to U.S.I.
Administrators, Neeb's health insurer, in which he documented his

_____

[4] Neeb disputes the dates that the blood samples were sent and
the results received.  The court is satisfied that the results of
the tests were faxed to Dr. Grodofsky on December 8, 1999.  The
next day, December 9, 1999, the lab sent an invoice for the blood
test.  There is no reason to believe that these dates are
inconsistent.  Dr. Grodofsky's testimony one and one half years
later does not establish otherwise.

[5] The plaintiff's insistence that the Radio Allergic Sorbant Test
("RAST") "has been strongly criticized by both the Plan
Administrator's publications and by medical authorities in Great
Britain," does not persuade the court that the tests are faulty
or otherwise invalid.  Further, the plaintiff failed to cite to
any publication that supports this assertion.

referral of Neeb to Dr. Rea in Dallas, Texas.  Dr. Rea is part of "The Environmental Health – Dallas," a facility that "offers a wide range of diagnostic and treatment services."

On April 10, 2000, Unum reassigned Neeb's case to Shannon Haskell, another disability benefits specialist.  Haskell spoke with an on-site medical consultant, Sharon Davenport, R.N. Davenport informed Haskell that she would be referring the medical portion of Neeb's case to William MacBride M.D., Unum's associate medical director.  After MacBride performed a medical review of Neeb's file, he concluded that with the exception of ragweed, Neeb had demonstrated no objective evidence of any type of allergy.  MacBride opined that Neeb's symptoms were best explained by Dr. Grodofsky's assessment.  On May 5, 2000, Dr. MacBride followed up with Dr. Grodofsky via telephone, and subsequently documented the phone call in a letter.[6]  During this phone call, Dr. Grodofsky confirmed that in his medical opinion, there was "no physiological or immunological basis . . . for [Neeb's] reported symptoms, and that her primary problem has not been allergies."

---

[6] In this letter, Dr. MacBride stated that "UNUMProvident values your time and is prepared to receive a reasonable invoice accompanied by your taxation identification number to reimburse you for it. If you choose to submit this, please do so directly to the customer care specialist involved with this disability claim, Shannon Haskell."  Unum's offer to compensate Dr. Grodofsky for the time he spent speaking to Dr. MacBride does not constitute an employer/employee relationship.

On May 9, 2000, Dr. Rea wrote a letter to Unum regarding his care and treatment of Neeb.  Rea stated that "Neeb is being treated for anaphylaxis with laryngeal edema, fatigue, fibromyalgia, immune deregulation, chemical sensitivity, food sensitivity and asthma."  Rea's goal was to "identify any inciting agents that may now contribute to [Neeb's] disorder and devise an individual plan to control any incitants and to treat their effects."  Dr. Rea wrote that "[t]his plan may include vaccine therapy, immunotherapy, nutritional therapy, alteration of [Neeb's] household environment, consumption of organic food; drinking safe glass bottled water, and deep heat depuration therapy."  Rea further discussed the specific treatment program established for Neeb and said that "we should reduce the chemical and antigen load on the metabolic and enzymatic pathways for the different organ systems.  This treatment would provide an internal environment conducive for healing and improve absorption of essential nutrients and co-factors."  Dr. Rea explained that "a working environment is unable to comply with the prescribed treatment plan."

In describing Neeb's limitations, Rea stated that "she must rigidly avoid public buildings or any physical environment where exposure [to 'waxes, cleaners, pesticides, petrochemicals, solvent, perfumes, fragrances and other compounds'] would occur."  Rea went on to write about Neeb's "substantial environmental

restrictions" and explained that "carpeting, particle board,
cleaning chemicals, perfumes, deodorizers, dusts and mites,
photocopier chemicals and supplies, vinyl and upholstered
furniture, foam padding, cigarette smoke, pesticides and
insecticides, minimal variations in heat and cold, clothing and
fabrics, unfiltered air and unfiltered water all cause severe and
disabling hypersensitivity reactions in [Neeb]."  Dr. Rea
concluded that "[Neeb's] condition is very unstable and will not
be able to engage in any type of work-related activity.  It is in
my medical opinion that [Neeb] is still disabled and is unable to
engage in ay type of work."

On June 7, 2000, Dr. MacBride reviewed the new information
submitted by Dr. Rea.  MacBride concluded that both Rea's
observations and his methods of treatment "stand in stark
contrast to that of Dr. Grodofsky."  MacBride maintained that the
most effective and practical approach to Neeb's situation was
precluded by Neeb's choice to forego her treatment with
Grodofsky, and begin treatment with Dr. Rea.

On July 1, 2000, Shannon Haskell, the disability benefits
specialist assigned to Neeb's case denied Neeb's claim for
disability benefits under the Policy.  The denial letter included
three separate explanations for the denial.

First, Haskell's letter discussed the Policy's definition of
disability as "limited from performing the material and

11

substantial duties of [the employee's] regular occupation due to
[] sickness or injury . . . ."  After reviewing Neeb's case, Unum
decided that she "would not be disabled from performing all types
of nursing occupations."  Thus, because Neeb's "restrictions and
limitations" (exposure to inhalants and volatile chemical odors)
would not preclude her from performing all types of nursing
occupations, she was not disabled under the Policy, and
therefore, not eligible for benefits.

Next, Haskell's letter explained that Unum had found no
objective support for Neeb's disability claim.  Scratch testing
had identified only a ragweed allergy, and her blood tests were
normal.  Further, Dr. Grodofsky examined Neeb while she was
complaining of mouth swelling, but he was unable to observe any
such swelling.  Lung function tests performed at the same time
also did not identify any airflow obstruction.  Dr. MacBride
conducted an independent review of Neeb's medical records,
including, but not limited to Dr. Grodofsky's assessment, and
concluded that there was no objective evidence of disabling
conditions.

Finally, Haskell explained that Neeb was not pursuing the
most appropriate treatment for her condition.  The Policy
required claimants to receive "the most appropriate treatment and
care which conforms with generally accepted medical standards,
for [the claimant's] disabling condition(s) by a doctor whose

specialty or experience is the most appropriate for [the claimant's] disabling condition(s), according to generally accepted medical standards." Unum determined that Dr. Grodofsky's treatment recommendations were the most appropriate according to generally accepted medical standards. Unum maintained that Neeb failed to obtain the most appropriate treatment and care by treating with Dr. Rea.

Haskell invited Neeb to provide any new additional information to support her disability claim, and informed her of her right to appeal the decision to Unum's quality review section. Neeb subsequently wrote to appeal Unum's denial. Neeb also submitted her medical records from Dr. Rea in support of her disability claim.

Dr. Rea diagnosed Neeb with "chronic asthma, anaphylaxis, anaphylaxis to foods, inhalant sensitivities, fatigue, immune deregulation, dysautonomia and chemical sensitivity." He repeated Neeb's limitations in identical language as his first letter, and again concluded that "[Neeb's] condition is very unstable and will not be able to engage in any type of work-related activity. It is in my medical opinion that [Neeb] is still disabled and is unable to engage in any type of work."

On September 26, 2000, Neeb wrote a letter appealing Unum's decision in which she stated that

> Your (sic) right, I can work, but I need to work in a
> safe environment, where I do not have to deal with food
> odors and other odors that taxes (sic) my system.
> There is no such place as far as I know.  The only safe
> place for me right now is my home.

For the appeal to the quality review section, Unum brought
in a second physician to evaluate Neeb's claim.  On October 18,
2000, Lawrence Broda M.D. reviewed and summarized Neeb's medical
records, and concluded that "[m]edical evidence doesn't support
reversal of the denial."  Broda found that "only [one emergency
room] visit revealed wheezing, none presented as stridor, and she
was treated with standard care for allergic reaction but did not
require hospitalization."  Broda also noted that "[Neeb's] exam,
[Pulmonary Function Tests] were normal [and] scratch testing done
to a variety of inhalants and food allergens revealed only
reaction to ragweed."

In reference to the medical records provided by Dr. Rea,
Broda found that Rea had "prescribed a cornucopia of treatment."
As to the results of Rea's tests however, Broda stated that
"[t]he finding of [positive] skin testing doesn't prove nor
correlate with symptomatic food allergies."  Last, Broda stressed
that "[t]here would be very little difference in environmental
makeup of a house as opposed to an office setting."

On November 7, 2000, Haskell notified Neeb that her claim
was again being denied.  Haskell's letter explained that the new

information submitted by Neeb (medical records from Dr. Rea and various emergency room reports) was insufficient to reverse the denial of benefits.  Haskell noted that the majority of treatment Neeb undertook with Dr. Rea was out of the mainstream therapy for allergic reactions, and "three out of four of [the Emergency Room visits] took place prior to [Neeb's] date of disability, indicating that [Neeb was] able to maintain the performance of [her] occupational duties."  Haskell then informed Neeb that it would be forwarding the denial and her complete file to the quality review section for an impartial review of the claim.

Unum's quality review section assigned Sandy Kaserman, Unum's lead appeal specialist, to perform a review of the decision on Neeb's claim.  On January 22, 2001, Kaserman notified Neeb that "[b]ased on a lack of substantive objective medical evidence to support restrictions and limitations to preclude work capacity, the denial will be upheld."

On February 21, 2001, Neeb requested an additional review of her disability claim.  Unum granted Neeb a third appeal.  On May 4, 2001, Unum notified Neeb that because it had "not received any additional information that would change [its] determination," the denial was upheld for the final time.  Unum then informed Neeb that she had "exhausted all administrative remedies in regard to [her] appeal for disability benefits."

On February 10, 2003, almost two years after the final denial, Neeb submitted an additional appeal to Unum.  With the appeal, Neeb also submitted a deposition of Dr. Grodofsky used in the cruise line litigation.  In addition, Neeb submitted an occupational assessment report prepared by Larry Harmon, PhD.  On February 28, 2003, Unum replied that all administrative remedies had been exhausted as of May 4, 2001.  Unum informed Neeb that "[n]o further appellate reviews will take place," and that all future correspondence would "be filed in the claim file, and no response will be completed."

Neeb then filed this action seeking declaratory, injunctive and equitable relief, liquidated and compensatory damages, costs and attorney's fees.

## **STANDARD**

"A denial of benefits under ERISA is reviewed by the District Court 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Muller v. First Unum Life Ins. Co., 341 F.3d 119, 123-24 (2d Cir. 2003) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  "[I]f the plan does grant such discretionary authority to its administrator, a reviewing court should defer to that authority, and evaluate the plan administrator's decisions under an 'arbitrary and capricious' standard."  Mario v. P & C

16

Food Mkts., 313 F.3d 758, 763 (2d Cir. 2002) (citing <u>Pagan v.</u>
<u>NYNEX Pension Plan</u>, 52 F.3d 438, 441 (2d Cir. 1995)).

This deferential standard of review authorizes a court to
"overturn a decision to deny benefits only if it was without
reason, unsupported by substantial evidence or erroneous as a
matter of law." <u>Pagan v. Nynex Pension Plan</u>, 52 F.3d 438, 442(2d
Cir. 1995)(citation omitted).  The court "cannot re-weigh the
evidence so long as substantial evidence supports the plan
administrator's determination." <u>Dunn v. Standard Ins. Co.</u>, 156
F. Supp. 2d 227, 236 (D. Conn. 2001).  "[S]ubstantial evidence is
such evidence that a reasonable mind might accept as adequate to
support the conclusion reached by the [decision maker and] . . .
requires more than a scintilla but less than a preponderance."
<u>Kocsis v. Std. Ins. Co.</u>, 142 F. Supp. 2d 241, 252 (D. Conn.
2001)(citation omitted).  Moreover, "judicial review 'is limited
to the [administrative] record in front of the claims
administrator unless the district court finds good cause to
consider additional evidence.'" <u>Muller v. First Unum Life Ins.</u>
<u>Co.</u>, 341 F.3d 119, 125 (2d Cir. 2003)(quoting <u>DeFelice v. Am.</u>
<u>Int'l Life Assurance Co. of N.Y.</u>, 112 F.3d 61, 67 (2d Cir. 1997).

In this case, Unum had discretionary authority[7] in determining whether Neeb was eligible for benefits and, accordingly, the court reviews the decision denying her benefits under the arbitrary and capricious standard.  The court's review is limited to the administrative record. See Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003).

## DISCUSSION

### 1. Wrongful Denial of Benefits under ERISA § 502(a)(1)(B)[8]

#### A. Violations of Code of Federal Regulations

##### i. 29 C.F.R. 2560.503-1(b)(3)

Neeb argues "that [Unum] denied her full and fair review . . . because it failed to abide by the minimum procedural requirements of the [Code of Federal Regulations]."  Neeb contends that Unum prescribed "a series of fees or medical treatments under the supervision of one of its physicians as a threshold requirement to receiving benefits" in violation of 29 C.F.R. 2560.503(b)(3).[9]  Specifically, Neeb alleges that Dr.

---

[7]  The policy provided that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."

[8]  ERISA § 502(a)(1)(B) establishes a civil cause of action "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 USCS § 1132(a)(1)(B).

[9]  29 CFR 2560.503-1(b)(3) prohibits "provision[s] or practice[s] that require[] payment of a fee or costs as a condition to making a claim or to appealing an adverse benefit determination."

Grodofsky was Unum's employee, and that "[o]n three separate occasions, [Unum] demanded a course of additional treatments at [Neeb's] expense under the direction of a physician controlled by [Unum]" (Dr. Grodofsky).

Unum responds that it "never required [Neeb] to treat with [Dr. Grodofsky] as a condition of her receiving policy benefits, and it did not deny her benefits because she did not treat with him." Unum maintains "that by undergoing treatment with Dr. Rea in Texas [Neeb] had not sought or obtained 'regular care' as the Policy defines that term."

The record does not indicate that Unum required any fees or costs to be paid as a condition prerequisite to Neeb obtaining benefits. Nor does the record support Neeb's allegation that Unum required Neeb to treat with Dr. Grodofsky as a condition prerequisite to her obtaining benefits. Rather, Unum stated that "the treatment recommendations made by Dr. Grodofsky would be considered the most appropriate for your treatment."

Following the treatment recommendations of a doctor who specializes in the treatment of the illness giving rise to the disability claim is not the same thing as "requir[ing] the payment of a fee or costs as a condition to making a claim or to appealing an adverse benefit determination." 29 CFR 2560.503-1(b)(3).

Further, Dr. Grodofsky is not an Unum employee. Unum's offer to compensate Dr. Grodofsky for the time he spent discussing Neeb's case does not turn him into Unum's agent, employee or consultant. Therefore, Unum at no time "demanded a course of additional treatments at Neeb's expense under the direction of a physician controlled by [Unum]." Thus, Unum did not violate 29 CFR 2560.503-1(b)(3).

### ii.    29 C.F.R. 2560.503-1(h)(2)

Neeb next argues that Unum provided "deference to a physician who has provided an initially adverse opinion and include[d] that physician in the claims adjudication process" in violation of 29 C.F.R. 2560.503-1(h)(2).[10] Specifically, Neeb contends that Grodofsky served Unum in numerous capacities, and that "Dr. Grodofsky's lack of support for granting [Neeb's] claims is listed as a central reason for denying [her] benefits."

Unum responds that it complied with ERISA because "[i]ts medical consultant during the administrative review process, Lawrence Broda, M.D., was not the same consultant whom Unum had consulted in connection with the adverse benefit determination, Robert MacBride, M.D." Further, Unum maintains that it was

---

[10] 29 C.F.R. 2560.503-1(h)(2) requires full and fair review. 29 C.F.R. 2560.503-1(h)(3)(ii) specifically prohibits reviews that afford deference to the initial adverse benefit determination, and prohibits reviews from being conducted by the individual, or subordinate of that individual, who made the adverse benefit determination.

entitled to defer to Dr. Grodofsky's medical opinion after its
own medical consultant "suggested that Dr. Grodofsky's opinions
were more worthy of belief than those of Dr. Rea."  Finally, Unum
argues that "Dr. Grodofsky never participated in a round-table
review of [Neeb's] case," and is not an Unum employee.

The record does not indicate that Unum deferred to the
initial adverse decision.  Instead, Unum brought in a different
doctor to exhaustively review the case.  Moreover, any deference
that was paid to Dr. Grodofsky's medical opinion did not violate
29 C.F.R. 2560.503-1(h)(3)(ii) because he did not make the
adverse benefit decision.  See Black and Decker Disability Plan v.
Nord, 538 U.S. 822, 834 (2003)(Holding that "courts have no
warrant to require administrators automatically to accord special
weight to the opinions of a claimant's physician; nor may courts
impose on plan administrators a discrete burden of explanation
when they credit reliable evidence that conflicts with a treating
physician's evaluation.").  Therefore, Unum did not violate 29
C.F.R. 2560.503-1(h)(3)(ii).

iii.   29 C.F.R. 2560.503-1(g)(1)

Neeb next argues that "[Unum] improperly relied upon
undocumented conversations as a primary ground to deny [Neeb's]
claims" in violation of 29 C.F.R. 2560.503 (g)(1).[11]

---

[11] 29 C.F.R. 2560.503 (g)(1) governs the "[m]anner and content of
notification of benefit determination."  Specifically, this
section requires "the plan administrator [to] provide a claimant
with written or electronic notification of any adverse benefit

Specifically, Neeb contends that Grodofsky's conclusion "that there was 'no immunological basis' for [Neeb's] symptoms, [is unsupported by analysis]."

Unum responds that "[its] medical consultants studied the records and reports of the treatment plaintiff had received and sought clarification of issues that appeared to rise from those records." Further, Unum maintains that the conversation between MacBride and Grodofsky was documented in a letter, and that the decision to deny benefits was not made "solely on the content of MacBride's letter to Grodofsky." Unum argues that "Dr. Broda's review is itself *prima facie* evidence that it was not 'cursory,' and on its own describes the materials he reviewed in preparing the document."

The court concludes that 29 C.F.R. 2560.503 (g)(1) is inapplicable to Neeb's argument that Unum improperly relied on undocumented conversations as its "primary ground to deny [her] claims." Further, Neeb's argument fails because the record does not indicate that any conversations *were* undocumented. Indeed, the record includes Dr. MacBride's letter to Grodofsky as documentation of their conversation. Further, the record indicates that Unum's decision was not based solely on the

_____

determination."

conversation between MacBride and Grodofsky.  Therefore, Unum did not violate 29 C.F.R. 2560.503 (g)(1).

### iv.    29 C.F.R. 2560.503-1(f)(3)

Neeb next argues that "she was not provided with an explanation of how to cure defects in her claim" in violation of 29 C.F.R. 2560.503-1(f)(3).[12]  Specifically, Neeb argues that when "[she] sought specific advice from [Unum] on what information was necessary to perfect her claim [she] was rebuffed."  Neeb further argues that "[i]n none of its denial letters did [Unum] ever discuss the applicable standard for showing disability due to chronic anaphylaxis."

Unum responds that every letter "[it] sent to [Neeb] described the procedures Unum employed in its review of her claim, the materials it reviewed, the thought processes its personnel and consultants adopted during those reviews and, most predominantly, stated clearly that she failed to present any objective evidence of restrictions and limitations."  Unum further responds that "[it] did not 'rebuff' [Neeb]."  Rather, Neeb was directed to "the appellate department for an answer to

---

[12] 29 C.F.R. 2560.503-1 (f)(3) requires "the plan administrator [to] notify the claimant . . . of the plan's adverse benefit determination within a reasonable period of time."  Therefore, 29 C.F.R. 2560.503-1 (f)(3) is inapplicable to this argument. However, 29 C.F.R. 2560.503-1(g)(1)(iii) requires "notification of any adverse benefit determination . . . [to include] . . . [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."

her question, a question that dealt with the procedure, not the substance, of her appeal."

The record does not support Neeb's argument that "she was not provided with an explanation of how to cure defects in her claim." The primary defect in her claim was "that she failed to present any objective evidence of restrictions and limitations." Unum's communications were clear. Unum consistently invited Neeb to submit any objective evidence to support her claim. Neeb failed to do so. Therefore, Unum did not violate 29 C.F.R. 2560.503-1(g)(1)(iii).

### v. 29 C.F.R. 2560.503-1(f)(3)

Neeb next argues that "[Unum] never communicated permissible grounds on which it was denying [Neeb's] claim" in violation of 29 CFR 2560.503-1(f)(3).[13] Specifically, Neeb alleges that "[Unum] offered no permissible basis for denying [Neeb's] claim under the Code of Federal Regulations and thus violated the notice requirement of the CFR."

Unum again responds that "[it] sent to [Neeb] described the procedures Unum employed in its review of her claim, the

---

[13] Like the previous argument, 29 C.F.R. 2560.503-1 (f)(3) is inapplicable to this argument because it requires "the plan administrator [to] notify the claimant . . . of the plan's adverse benefit determination within a reasonable period of time." However, 29 CFR 2560.503-1(g)(1)(i) requires notification of an "adverse benefit determination [to include] . . . [t]he specific reason or reasons for the adverse determination."

materials it reviewed, the thought processes its personnel and consultants adopted during those reviews and, most predominantly, stated clearly that she failed to present any objective evidence of restrictions and limitations."

Unum's initial denial letter included three specific reasons for Neeb's denial.  First, Unum found that Neeb's "restrictions and limitations . . . would not preclude [her] from performing all types of nursing occupations."  Second, Unum found that "there was no objective support [that Neeb was] unable to perform the duties of any type of nursing occupation."  Third, Unum found that Neeb was not pursuing the "most appropriate treatment for [her] condition."  Therefore, the court concludes that Unum provided Neeb with "[t]he specific reason or reasons for the adverse determination," and complied with 29 CFR 2560.503-1(g)(1)(i).

### vi.    29 C.F.R. 2560.503-1(f)

Finally, Neeb argues that "[Unum] failed to provide impartial review of the evidence" in violation of 29 CFR 2560.503-1(f).[14]  Specifically, Neeb contends that "Dr. Lawrence Broda simply could not have read the actual source materials in this case."

_____

[14] 29 CFR 2560.503-1(f) only applies to "[t]iming of notification of benefit determination," and does not require "impartial review."  Full and fair review is required by 29 CFR 2560.503-1(h)(2).

Unum responds that "[Neeb] offers no proof of her allegations. In fact, Dr. Broda's review is itself *prima facie* evidence that it was not 'cursory,' and on its own it describes the materials he reviewed in preparing that document."

The administrative record does not indicate that any of Unum's three reviews were not impartial.  The court concludes that Unum complied with the full and fair review requirements set forth in 29 CFR 2560.503-1(h)(2).  Neeb's argument that Unum failed to comply with the Code of Federal Regulations' procedural requirements fails.

B. <u>Arbitrary and Capricious</u>

Neeb next argues that "[Unum's] denial . . . was Arbitrary and Capricious because the Denial was not supported by substantial evidence." Specifically, Neeb maintains that "Grodofsky's work was so insubstantial and sloppy as to be both incompetent and deceitful."  Further, Neeb argues that "Dr. Grodofsky is the only authority in support of [Unum's] position. Without Dr. Grodofsky, [Unum] lacks substantial evidence to sustain its position."

Unum responds that it "is entitled to judgment because [Neeb] cannot establish that its decision to deny benefits was not supported by substantial evidence."  Unum maintains that "the process [it] undertook in reviewing [Neeb's] application was rational and appropriate."  Further, Unum argues that it "was

entitled to rely on the opinion of one of [Neeb's] treating
physicians and reject the other opinion."  Finally, Unum avers
that Neeb "failed to provide objective proof that she was
disabled."

After a review of the administrative record, including
Neeb's submissions consisting of Dr. Grodofsky's deposition and
Larry Harmon's occupational assessment report, the court
concludes that Unum's decision is supported by substantial
evidence.  Unum's review involved four independent medical
reviews of all the evidence in the administrative record by two
physicians and two nurses.  Unum's decision was based on multiple
factors.  Neeb did not prove that she was unable to perform each
of the material duties of her regular occupation.  Indeed, Unum
maintains that "even though it was evident early on in the claim
that [Neeb's] allergies objectively were not disabling, [it]
conducted a thorough review of the materials available to it,
consulted with and received advice from its medical and
vocational experts, and only then made a decision on [Neeb's]
claim."  Finally, the administrative record does not include
objective proof of disability.

The administrative record provides no evidence that Unum's
decision was arbitrary and capricious.  Neeb has failed to raise
a genuine issue of material fact that Unum has violated any of
the Code of Federal Regulations' procedural requirements, or that

Unum's decision was arbitrary and capricious.  Thus, her claim
that Unum wrongfully denied her disability benefits fails.

2. <u>Breach of Fiduciary Duty Under ERISA § 502(a)(2)</u>[15]

Neeb further argues that "[Unum] breached its fiduciary duty
in administering this claim." Specifically, Neeb contends that:
1) "[Unum] through its agents committed a breach of Fiduciary
Duty by modifying [Neeb's] claim in the hopes of making the
illness fit the tests available;" 2) "[Unum] breached its
fiduciary duty when it lied to [Neeb] about its lack of
possession offered by Dr. William Rea;" and 3) "Dr. Grodofsky who
[performed the following duties]: (a) physician who provided the
only adverse testimony; (b) consulting physician; and (c) judge of
[Neeb's] ability to receive benefits – never disclosed his own
acts of dishonesty and incompetence."

Unum responds that "[s]ince [it] determined that [Neeb] was
not disabled as defined by the Policy, her claim that Unum
improperly 'expanded the cause of [her] anaphylaxis to include
both cayenne peppers and green peppers' is of no consequence."

Addressing the "lost records," Unum argues that it
"attempted to obtain Dr. Buffaloe's records in March 2000 but was
not successful because the 'office [was] no longer open.'"  Unum
states that it stopped attempting to obtain the records after Dr.

---

[15] ERISA § 502(a)(2) sets forth a civil cause of action available
to participants, beneficiaries, and fiduciaries for relief of
violation of fiduciary duty.

Buffaloe's office failed to respond to fax or mail for over one month. Further, Unum maintains that it did not receive Dr. Rea's data until October 2, 2000, and therefore, it was unable to "lose" it "because it did not have it to lose." The only thing Unum received from Dr. Rea prior to October 2, 2000 was a letter describing Neeb's diagnosis, care and treatment.

Regarding Dr. Grodofsky, Unum responds that "Dr. Grodofsky was [Neeb's] doctor. He never worked for Unum." Further, Unum maintains that "Dr. Grodofsky never participated in a round-table review of [Neeb's] case." Last, Unum argues that it "did not retain Dr. Grodofsky to consult on [Neeb's] claim and then, once he had determined unfavorably towards her, violate ERISA by using him a consultant to review her medical records on her appeal."

The administrative record does not support Neeb's allegations. The disability claim was for "[shortness of breath], hoarseness, extreme fatigue, severe allergic reactions (anaphylaxis) and chemical sensitivities" which were brought on by an allergy to red pepper. Davenport did not change the diagnosis. Davenport's questions as to Neeb's diagnosis do not appear to violate any fiduciary duties. Next, the record contains no evidence that Unum lied about losing medical records or that Dr. Grodofsky participated in a roundtable.

Last, relief under ERISA 502(a)(2) is authorized "only when a fiduciary has breached one of it its duties to an employee benefit plan." <u>Rudolph v. Joint Indus. Bd. Of the Elec. Indus.</u>, 137 F. Supp 2d 291, 297(S.D.N.Y. 2001). There is no evidence that there was any breach of fiduciary duty to the plan. "[A] fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA." <u>Id.</u> (citing <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 147-48 (1985)). <u>Id.</u> Thus, Neeb's claim of breach of fiduciary duty must also fail.

## <u>CONCLUSION</u>

The court concludes that Unum's decision to deny Neeb's claim for long term disability benefits was reasonable and

supported by substantial evidence in the administrative record. It is therefore not arbitrary or capricious, and Unum is entitled to judgment on the administrative record.  For the foregoing reasons, Unum's motion for judgment on the administrative record (document no. 19) is GRANTED.  Unum's motion to strike Neeb's memorandum from the record is DENIED as moot.

It is so ordered this 11th day of April, 2005 at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge